## ASSOCIATED EMPLOYERS' RECIPROCAL et al. v. STATE INDUSTRIAL COMMISSION.

No. 12809—Opinion Filed July 25, 1922.

(Syllabus.)

**Master and Servant—Workmen's Compensation — Finality of Decisions Below on Facts.**

By the provisions of section 10 of the Workmen's Compensation Law (chap. 246, Session Laws 1915), the decision of the State Industrial Commission is made final as to all questions of fact, and on appeal to this court from an award of the Industrial Commission the court is without jurisdiction to weigh the evidence for the purpose of determining whether the same preponderates in favor or against the findings of fact made by the Industrial Commission.

Appeal from State Industrial Commission.

Action by Associated Employer's Reciprocal and others to review award of workman's compensation to Elmer W. Parker. Affirmed.

Twyford & Smith and Clayton B. Pierce, for petitioners.

George F. Short, Atty. Gen., and Kathryn Van Leuven, Asst. Atty. Gen., for respondents.

JOHNSON, J. This proceeding has been regularly commenced in this court to review an award of the State Industrial Commission, which is as follows:

"Now, on this 7th day of November, 1921, comes on to be determined the motion filed herein by the respondent and insurance carrier to set aside the award made in this cause on October 11, 1921, and the commission having considered said motion and in connection therewith having re-examined the testimony taken at a hearing at Hominy, Okla., on May 10, 1921, before a member of the commission, and from said testimony and other reports on file finds the following facts:

"(1) That the claimant herein was a member of a crew of men employed by McDowell & Huston Brothers and that said claimant worked under the direction of said respondent and was engaged in a hazardous occupation within the meaning of the statute, and that while in the employment of said respondent and in the course of his employment, the claimant received an accidental injury on the 15th day of January, 1921;

"(2) That as a result of said injury the claimant was temporarily totally disabled from performing his work from January 15, 1921, to March 1, 1921, a period of 6 weeks and 2 days;

"(3) That the respondent had proper notice of said accident and the employe filed his claim for compensation with the commission within the statutory period;

"(4) That the claimant's average wage at the time of his injury was $12 per day.

"The Commission is Therefore of the Opinion: That by reason of the aforesaid facts the claimant is entitled under the law to the sum of $114, being compensation at the rate of $18 per week for a period of six weeks and two days.

"It Is Therefore Ordered: That within ten days from this date McDowell & Huston Brothers or the Associated Employers' Reciprocal pay to the claimant the sum of $114 in full and final settlement under this award, and also pay all medical expenses incurred as the result of said accident."

The petitioners make six specifications of error in their petition, which are discussed in their brief under two propositions, to wit:

"(1) The claimant was not 'engaged' in manual work as contemplated by section 4 of article 1 of the Compensation Act, and therefore not an employe.

"(2) Under the evidence the members of 'casing crews' are not employes of the driller of a well."

It seems that the petitioners McDowell & Huston Brothers were oil well drilling contractors engaged in drilling an oil well for the Douglass Oil Company on a lease near Hominy, Okla. (R. 2). In the drilling of an oil well it becomes necessary, as the depth increases, to change the casing; that is, to set the casing in use on a ledge or stratum of rock and change to a smaller sized casing, which is used inside the initial casing. For the purpose of making this change the driller calls in a "casing crew," especially skilled in this work. This particular phase of oil well drilling is their occupation or specialty.

The Industrial Commission found and held that one Elmer Parker, a member of the King casing crew, which was hired by McDowell & Huston Brothers, drilling contractors, to run for them a string of casing, was an employe of the said McDow-

ell , & Huston, drilling contractors, for whom the work was to be done, who were to pay for said work, and who were in charge of the premises upon which the accident occurred for the purpose of, and in the course of, the drilling of an oil well. Of the award so allowed, petitioners ask for review, giving as the reason therefor the assignments of error above set out.

The propositions argued by counsel for petitioners in their brief: (1) That the claimant was not engaged in manual work, and (2) that the members of casing crews are not employes of the driller of a well— are both questions of fact and were covered by the commission's findings in paragraph 1 thereof, in the following language:

"(1) That the claimant herein was a member of a crew of men employed by McDowell & Huston Brothers and that said claimant worked under the direction of said respondent and was engaged in a hazardous occupation within the meaning of the statute, and that while in the employment of said respondent and in the course of his employment, the claimant received an accidental injury on the 15th day of January, 1921."

And such findings are conclusive upon this court. McAlester Colliery Co. v. State Industrial Commission, 85 Okla. 66, 204 Pac. 630; Sun Coal Co. v. State Industrial Commission, 84 Okla. 164, 203 Pac. 1042; Superior Smokeless Coal & Mining Co. v. State Industrial Commission, 85 Okla. 204, 205 Pac. 497.

While counsel for petitioners seem to concede the rule announced, yet they seek to argue around the proposition, the gist of their contention being: (1) That all the evidence showed that the claimant, Elmer Parker, was not at work at the time he was injured; (2) that the claimant, Elmer Parker, was working for the foreman of the casing crew, Roy Callison, and not for McDowell & Huston Brothers, the drilling contractors.

The findings of the commission were based upon the following testimony: Mr. Huston, drilling contractor, testified as follows:

"Q. State your name. A. A. J. M. Huston. Q. Were you a member of the firm of McDowell & Huston? A. Yes, sir. Q. What was your connection with the rig, the operation? A. I was drilling a well. Q. Well, state how he happened to be out there? A. Well, I sent an order for him to be called out. Q. Who did they call? A. The King casing crew. Q. And, personally, who did they call? A. I don't

know." (Examination of Mr. Huston by the Court.) "Q. How much did you pay them? A. $55, I believe. Q. Did you know the number of men who were coming out? A. Yes; five men. Q. And you agreed to pay them how? A. Well, we just called them out and they send in their bill, and we pay them. Q. Well, don't you have any idea of what it would be? A. Sometimes, sometimes you have trouble and don't know. Q. Then you pay them for their time? A. Yes, ma'am. Q. Do you know the rate these men get? A. No, I don't. Q. You just pay the foreman, as a matter of convenience, and he pays the men? A. Yes." .

Mr. Callison testifies: '

"Q. You were responsible to Mr. Parker for the amount of his wages? A. Well, the contractor or company whoever he was working for. (Testimony continued.) Q. What did you tell Mr. Parker? A. I told him we had to go run a string of 15 and a half for Huston & McDowell. Q. Anything said about wage? A. No, sir. We had been running casing. Q. Did you tell him who he was going to work for? A. Huston & McDowell. Q. How do they pay their employes? A. Well, they send it to the King casing crew and I write the boys out a check when it comes in. (Testimony continued.) Q. Did you carry any workmen's compensation insurance on the King casing crew? A. No, ma'am."

Examination of the Claimant, Elmer Parker, by the Court.

"Q. Under whose direction were you working when you were called out there? A. Roy Callison. Q. Did he direct the work, say it should be done? A. Yes, ma'am. Q. What did the driller have to say about it? A. While he has the casing crew you have to do just as he says. Q. The casing crew has to do just as the driller says? A. Yes, ma'am. Q. Who was the driller on this job? A. Mr. Huston. Q. Did he tell you when to start to work? A. Yes. Q. When to stop? A. Yes, stopped when it— Q. Then the driller directed your operations as a member of the casing crew? A. Yes, ma'am. Q. What did Mr. Callison do? A. He is the man that handles the work. Q. Just gets the men together and takes them out there? A. Yes, ma'am. Q. Is there any reason they want to hold up this work who would stop the work? A. The driller. Q. If the driller told you to stop you would stop? A. Yes, ma'am. Q. You couldn't stop unless he told you? A. No. Q. You couldn't have worked unless he were there? A. No."

The foregoing testimony, we think, amply supports the findings of the Industrial Commission; and such findings are, therefore.

approved, and the award of the commission affirmed.

PITCHFORD, V. C. J., and McNEILL, ELTING, and KENNAMER, JJ., concur.